IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARON PETROSKI, on behalf of herself and others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>SPEEDWAY LLC<br><br>        Defendant. | Civil Action No. |

## NOTICE OF REMOVAL

Defendant Speedway LLC ("Defendant", or "Speedway"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 submits the following Notice of Removal with respect to the above-captioned case, which was filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, Case No. 230302703. In support of this Notice of Removal, Defendant states the following:

### Timeliness and Background

1.      On March 23, 2023, Plaintiff Sharon Wright ("Plaintiff") commenced a civil action against Defendant by filing a complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania. The lawsuit is recorded on that Court's docket as Case No. 230302703. There are no other parties actually named in Plaintiff's complaint, though Plaintiff is seeking to pursue the case as a class action.

2.      Defendant was served on March 30, 2023. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Plaintiff's "Complaint – Class Action" ("Compl.") and Civil Cover Sheet which constitute "all summons, pleadings, and orders" served upon Defendant in the state court action, is attached hereto as **Exhibit A**. Because Defendant has filed this Notice of Removal within thirty days of service, this Notice of Removal is timely. *See* 28 U.S.C. § 1446(b).

3. In her Complaint, Plaintiff alleges that she worked as a full time sales associate for Speedway in Philadelphia, Pennsylvania from October 2022 through December 2022. (Compl. ¶ 11.)

## Venue And Notice

4. Removal is appropriate "to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Venue is proper in this District because, pursuant to 28 U.S.C. § 118(a), this District embraces the Court of Common Pleas of Philadelphia County, Pennsylvania, the place where the removed action was pending. 28 U.S.C. § 1441(a).

5. Promptly upon filing of this Notice of Removal, Defendant shall file a Notice of Filing of Notice of Removal, with a copy of the Notice of Removal, with the Court of Common Pleas for Philadelphia County and will serve a copy thereof on Plaintiff through his counsel, pursuant to 28 U.S.C. § 1146(d). A copy of this notice is attached hereto as **Exhibit B**.

## Diversity Jurisdiction

6. Pursuant to 28 U.S.C. § 1332(a), "[t]he district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a).

7. In this case, both the "diversity" and "amount in controversy" requirements are met.

## The Parties Are Diverse

8. As reflected in Plaintiff's Complaint, Plaintiff is a resident (and, thus, presumably, a citizen) of Pennsylvania. (Compl. ¶ 3.)

9. Section 1332 defines corporate citizenship as follows: "[f]or the purpose of this section and section 1441 of this title . . . a corporation shall be deemed to be a citizen of every

-

State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . ." 28 U.S.C. § 1332(c).

10. For purposes of jurisdiction, the Third Circuit has likened the citizenship of a limited liability company, such as Speedway, LLC, to the citizenship of partnerships and other unincorporated associations and has held that the citizenship of a limited liability company is determined by the citizenship of all its members. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). As such, a limited liability company holds the citizenship held by each of its members. *Id.*

11. Speedway LLC is wholly owned by SEI Speedway Holdings, LLC, and is Speedway LLC's sole Member. SEI Speedway Holdings, LLC is wholly owned by 7-Eleven, Inc. 7-Eleven, Inc. is a Texas corporation with its principal place of business in Texas. (Declaration of Rachel Ionta ("Ionta Decl.") ¶ 7.)

12. Accordingly, Speedway LLC is a citizen of Texas for diversity purposes.

13. Thus, complete diversity is satisfied because this dispute is between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. §§ 1332(a).

**The Amount In Controversy Exceeds $75,000 With Just Plaintiff's Individual Claims**

14. "A complaint will be deemed to satisfy the required amount in controversy unless the defendant can show to a legal certainty that the plaintiff cannot recover that amount." *Spectacor Mgmt. Grp. v. Brown*, 131 F.3d 120, 122 (3d Cir. 1997); *Liptok v. Bank of Am.*, 773 F. App'x 97, 100 (3d Cir. 2019); *APT Sys., Inc. v. Apple, Inc.*, 2022 WL 226812, at *7 (E.D. Pa. Jan. 26, 2022) (if plaintiff "has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," then removal is proper unless, on a motion for remand, the

-

plaintiff can show "to a legal certainty, that the amount in controversy could not exceed the statutory threshold") (quoting *Frederico v. Home Depot*, 507 F.3d 188, 196–97 (3d Cir. 2007)).

15. Here, it cannot be said "to a legal certainty" that Plaintiff "cannot recover" more than $75,000, exclusive of interest and costs.

16. In her Complaint, Plaintiff claims Speedway violated the Philadelphia Fair Workweek Employment Standards ("Fair Workweek Law"), Phila. Code §§ 9-4600, et seq., by allegedly: (1) failing to provide written good faith estimates; (2) failing to provide advance notice of work schedules; (3) failing to pay schedule change premiums ("Predictability Pay"); (4) failing to provide sufficient rest between work shifts; and (5) failing to offer newly available shifts to existing employees before hiring new ones. (*See* Compl. at ¶¶ 14-68.) She also alleges that she was wrongfully terminated in violation of the Law for engaging in activity protected by the Law. (*Id.* ¶¶ 69-74.)

17. Plaintiff seeks damages for, among other alleged injuries, unpaid wages; unpaid Predictability pay; presumed damages; liquidated damages; prejudgment interest; litigation costs, expenses, and attorney's fees; reinstatement to her job; unpaid compensation and back pay; and "any other further relief this Court deems just and proper." (Prayer for Relief.) Her Sixth Cause of Action (Retaliation) further seeks ""any other legal or equitable relief as may be appropriate to remedy the violation."

18. Plaintiff was paid on a weekly basis and worked eleven pay periods in Philadelphia. (Ionta Decl. ¶ 10.)

19. Plaintiff alleges that Speedway failed to comply with Philadelphia's Fair Workweek law. She alleges that violations happened "regularly." In particular, she claims that Speedway:

-

1. Did not provide her with her "good faith estimate" of the hours, dates, and locations that she would be expected to work. (Compl. ¶ 14.)

2. Failed to always provide and/or post her work schedule at least 14 days in advance. (*Id.* ¶ 16.)

3. Regularly changed her schedule by adding more than 20 minutes without paying her Predictability Pay. (*Id.* ¶ 18.)

4. Failed to obtain written consent for assigning her additional hours. (*Id.* ¶ 20.)

5. "On occasion," reduced her schedule by more than 20 minutes and sent her home early without providing her Predictability Pay. (*Id.* ¶ 22.)

6. "On occasion," required her to work shifts with insufficient rest without consent, in violation of the Fair Workweek law. (*Id.* ¶ 24.)

7. Failed to provide her with written notification of the details of available shifts, including whether shifts are recurring, how to express interest in picking them up, and its policy for offering and distributing work shifts under the Fair Workweek Law, before hiring new employees in violation of Phila. Fair Workweek Law § 9-4605. (*Id.* ¶ 25.)

20. Each of the above allegations about various types of violations of the Philadelphia Fair Workweek law adds alleged "presumed damages" and/or alleged unpaid wages to the amount in controversy. Furthermore, for each type of damage, Plaintiff also seeks "liquidated damages up to $2,000," *i.e.*, a dollar-for-dollar doubling of alleged "presumed damages" and/or alleged unpaid wages up to $2,000. (*See* Compl. ¶¶ 43, 48, 53, 60, 68, 7; Phila. Code § 9-4611(7)(c).)

21. Plaintiff's prayer for relief does not include a cumulative cap of $2,000 on liquidated damages. (*See* Compl. at "Prayer for Relief"). Thus, Plaintiff seeks up to $2,000 in

liquidated damages on each and every cause of action. Accordingly, although Speedway disputes that cumulative liquidated damages in excess of $2,000 for separate alleged violations of the Fair Workweek Law are recoverable, Plaintiff's Complaint puts this issue in controversy.

22. In particular:

1. In the First Cause of Action, the alleged failure to provide a "good faith estimate" adds at least **$200** to the amount in controversy in presumed damages. (Compl. ¶ 43.) An additional $200 in alleged liquidated damages would mean that the total amount in controversy for this alleged violation is $400. (*Id.*)

2. In the Second Cause of Action, each alleged failure to <u>provide</u> or <u>post</u> an advance notice of her work schedule adds $50 to the amount in controversy. (Compl. ¶ 48.) Since she claims that that Speedway "always" failed to provide this (Compl. ¶ 16), and she was paid on a weekly basis for 11 pay periods, this adds **$550** in damages to the amount in controversy.

3. In the Second Cause of Action, each alleged failure to promptly notify Plaintiff of changes to her work schedule adds $25 per pay period. (*Id.*) This adds **$275** to the amount in controversy based on the 11 pay periods that Plaintiff worked in Philadelphia.

4. In the Second Cause of Action, each alleged failure to obtain written consent for adding hours adds $100 per pay period when this is claimed to have happened. Since Plaintiff said this occurred "regularly" (Compl. ¶¶ 18, 20-21), a reasonable presumption is that it happened in at least half of her pay periods (i.e. 5.5), adding **$550** to the amount in controversy. (Compl. ¶ 48.)

5. The Second Cause of Action thus puts in controversy a cumulative of $1,375 as to Plaintiff alone. An additional $1,375 in alleged liquidated damages as to the Second Cause of Action would mean that the total amount in controversy for this count is $2,750.

6. The Third Cause of Action seeks an undisclosed amount of "unpaid Predictability Pay." The Complaint alleges that the failure to pay Predictability Pay occurred "regularly" by requiring additional hours, and "on occasion" by reducing hours. (Compl. ¶¶ 18, 22.) Assuming *arguendo* that Plaintiff is claiming one hour of unpaid Predictability Pay per week (and Plaintiff may be seeking more), then this count puts in controversy $145.75 in alleged unpaid Predictability Pay, and an additional $145.75 in liquidated damages, for a total of $291.50.

7. In the Fourth Cause of Action, each time Plaintiff was asked to work a shift with insufficient rest, she is entitled to $40 in compensatory pay. Plaintiff alleged that this happened, "on occasion." If this happened once every other week that Plaintiff worked, that would add **$220** to the amount in controversy. (Compl. ¶ 60.) An equal amount of liquidated damages would bring the amount in controversy for this claim to $440.

8. In the Fifth Cause of Action, each alleged failure to provide written notice of its policy for distributing work hours as required by section 9-4605(6) adds $50 per pay period to the amount in controversy, or a maximum of **$550** (Compl. ¶ 68.)

9. Also in the Fifth Cause of Action, each alleged failure to award available work hours as required by section 9-4605(4) of the Philadelphia Fair Workweek law adds $1,000 per violation to the amount in controversy. Assuming a minimum of one

-

violation, this theory of liability adds $1,000 to the amount in controversy. (Compl. ¶ 28.)

10. The Fifth Cause of Action thus puts in controversy a cumulative of $1,550 as to Plaintiff alone. An additional $1,550 in alleged liquidated damages as to the Fifth Cause of Action would mean that the total amount in controversy for this count is $3,100.00.

23. Accordingly, Plaintiff's first five causes of action place a total of $6,981.50 in controversy.

24. Plaintiff's Sixth Cause of Action asserts a retaliatory termination based upon alleged activity protected by the Fair Workweek Law. (Compl. ¶¶ 70-74.) It seeks reinstatement, "unpaid compensation and back pay," "liquidated damages up to $2,000," "any other legal or equitable relief as may be appropriate to remedy the violation," and "reasonable attorneys' fees or costs." (Compl. ¶ 74.)

25. Based upon Defendant's preliminary investigation of the Complaint's allegations, Plaintiff earned $13.25 per hour at the time of her separation, as a fulltime employee. (Ionta Decl. ¶ 9.) On a weekly basis, $13.25 totals approximately $530 per week, assuming 40 hours per week but not including overtime. Plaintiff alleges that she was separated on December 23, 2022. (Compl. ¶ 28.) That was approximately 18 weeks ago. Accordingly, Plaintiff's alleged "back pay" through the time of removal may total $9,540 (18 weeks x $530 per week). Liquidated damages for purported violations of the Fair Workweek Law thus place an additional $2,000 in controversy, for a total of $11,540.

26. Based upon the Complaint, Plaintiff also may be seeking damages for emotional distress arising out of her allegedly retaliatory termination. Although not sought explicitly,

-

Plaintiff does seek "any other legal or equitable relief as may be appropriate to remedy the violation." (Compl. ¶ 74.) This language comes from the Fair Workweek Law. *See* Phila. Code. § 9-4611(7)(d).

27. Speedway has researched the issue, and has not found any authority addressing whether a court may award prevailing retaliation plaintiffs emotional distress damages under the Fair Workweek Law as "appropriate" forms of "legal or equitable relief." However, analogous language in other statutes has been permitted, by some courts, to permit recovery of emotional distress damages. *See Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 112 (7th Cir. 1990) (Fair Labor Standards Act's authorization of award of "appropriate legal or equitable relief" permits recovery of emotional distress damages caused by retaliatory discharge). Thus, based upon the state of the law at present, Speedway cannot "show to a legal certainty that [Plaintiff] cannot recover" emotional distress damages. *Spectacor Mgmt. Grp.*, 131 F.3d at 122.

28. Damages incurred as a result of alleged emotional distress are properly considered in determining whether the amount in controversy meets the jurisdictional minimum, and based on Plaintiff's allegations, a modest award would cause the amount in controversy to exceed $75,000. *See Agnus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) (concluding that plaintiff's allegations of emotional distress damages were included in calculating the amount in controversy); *see also Andujar v. Gen. Nutrition Corp.*, 767 Fed. Appx. 238, 243 (3d Cir. 2019) (affirming award of $75,000 in wrongful termination case for violation of anti-discrimination laws); *Bolden v. Se. Pa. Transp. Auth.*, 21 F.3d 29, 33 (3d Cir. 1994) (finding evidence supported jury verdict of $250,001 for emotional distress where the plaintiff "produced virtually no evidence of a lessened reputation," of "physical effects of distress" or "of having received counseling" but "presented testimony of four persons in addition to himself" that catalogued the emotional distress he suffered,

along with evidence of lost income); *Johnston v. Sch. Dist. of Phila.*, Civil Action No. 04-4948, 2006 WL 999966, at *6–14 (E.D. Pa. Apr. 12, 2006) (declining to reduce $500,000 award for emotional distress to each plaintiff caused by employer's race discrimination); *Glass v. Snellbaker*, Civil Action No. 05-1971 (JBS), 2008 WL 4371760, at *20 (D.N.J. Sept. 17, 2008) (reducing the "compensatory damage award for emotional distress to $50,000," where the plaintiff testified that he felt "humiliated and emotionally devastated but continued coming to work just as before and reported no changes in sleep or other emotional effects," "did not suffer financial stress at that time, as his salary and benefits continued as long as he remained on the job," "sought no counseling or other mental health treatment, and no family member or coworker testified about the impact that Defendants' conduct had on him").Accordingly, although awards of significantly more than $50,000 for emotional distress have been found proper, it is appropriate to include $50,000 in the amount in controversy at this point in the litigation. *See Ralston v. Garabedian*, 2022 WL 3704097, at *54 (E.D. Pa. Aug. 26, 2022) (awarding $50,000 as "presumed damages" for "garden variety" emotional distress).

29.     Thus, in sum, the amount in controversy in this case is at least $68,521.50 *before* considering attorneys' fees. That is $6,981.50 in estimated alleged unpaid wages and liquidated damages under the first five causes of action, $11,540 in estimated alleged back pay and liquidated damages under the sixth cause of action (retaliation), and $50,000 in estimated alleged potential garden variety emotional distress damages under the sixth cause of action as a potentially "appropriate" form of "legal or equitable relief."

30.     Of course, Plaintiff does seek attorneys' fees, which must be considered in calculating the amount in controversy. *See Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) ("attorney's fees are necessarily part of the amount in controversy if such fees are available

to successful plaintiffs under the statutory cause of action."). The Philadelphia Fair Workweek law provides that "[A]n aggrieved person shall also be entitled to award of reasonable attorney's fees and costs." *See* Phila. Code § 9-4611(7)(c).

31.     Attorneys' fees could amount to as much as thirty percent or more of any judgment Plaintiff is able to obtain. *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (using 30% figure to calculate attorneys' fees for amount in controversy in the class action context); *see also Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 489 (E.D. Pa. 2018) (concluding class counsel entitled to approximately 35% of the total settlement); *Graudins v. Kop Kilt, LLC*, No. 14-2589, 2017 WL 736684, at *10 (E.D. Pa. Feb. 24, 2017) (approving attorneys' fees at 30% of the settlement amount). Here, factoring in 30% of fees would add more than $20,000 to the amount in controversy.

32.     Thus, inclusive of attorneys' fees, a fair estimate of the alleged amount-in-controversy is $89,077.95.

33.     Accordingly, while Defendant contends that Plaintiff's claims lack merit and Plaintiff is entitled to nothing, and further reserves the right to dispute that various forms of potential damages are recoverable, the amount in controversy exceeds $75,000, exclusive of interest and costs, and the case is properly removable to federal court. *See* 28 U.S.C. § 1332(c).

## Conclusion

34.     Based on the foregoing, this Court has original jurisdiction over this action based on the diversity of the parties under 28 U.S.C. § 1332, and because the amount in controversy exceeds $75,000 on Plaintiff's individual claims. Therefore the Court properly may exercise jurisdiction over this lawsuit. 28 U.S.C. § 1441(a).

-

35. Should Plaintiff seek to remand this case to state court, Defendant respectfully asks that it be permitted to brief and argue the issue of removal prior to any order remanding this case. In the event the Court decides remand is proper, Defendant asks that the Court retain jurisdiction and allow Defendant to file a motion asking this Court to certify any remand for interlocutory review by the Third Circuit Court of Appeals, pursuant to 28 U.S.C. § 1292(b).

WHEREFORE, Speedway requests that the above-described action pending against it be removed to this Court. Speedway also requests all other relief, at law or in equity, to which it is justly entitled.

DATED: April 28, 2023

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Jacob Oslick*
    Jacob Oslick
    joslick@seyfarth.com

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York  10018
Telephone:    (212) 218-5500
Facsimile:    (212) 218-5526

Attorneys for Defendant

-

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing NOTICE OF REMOVAL was served on all counsel of record, as listed below, via U.S. Mail on the 28th day of April, 2023.

David Huang and Nadia Hewka
Community Legal Services, Inc.
1424 Chestnut St.
Philadelphia, PA 19102

Sally J. Abrahamson
Werman Salas P.C.
3335 18th Pl NE
Washington, DC 20002

Ryan Allen Hancock
Willig, Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103

Sarah R. Schalman-Bergen and Krysten Connon
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116

　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Jacob Oslick*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Jacob Oslick